IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| THE JOHN ERNST LUCKEN REVOCABLE TRUST, and JOHN LUCKEN and MARY LUCKEN, Trustees,<br><br>    Plaintiffs,<br><br>vs.<br><br>HERITAGE BANKSHARES GROUP, INC., et al.,<br><br>    Defendants. | No. 16-CV-4005-MWB<br><br>**ORDER** |

_____

## *I.   INTRODUCTION*

This matter is before the Court pursuant to Plaintiffs' motion for a protective order and expedited hearing. (Doc. 31). Defendants seek as part of their discovery to depose William "Bill" Peterson. *Id*. at 2. Peterson has provided Plaintiffs with advice on several of Plaintiffs' projects since the late 1990's, but has not held an active attorney's license since 2001, with the exception of a short period in 2009-10. (Doc. 31-2 at 2-3). Plaintiffs seek a protective order to prevent the deposition of Peterson and release of Peterson's files relating to his work with Plaintiff, asserting that Peterson's file and communications with Plaintiffs are covered by attorney-client privilege and the work product doctrine. (Doc. 31 at 4-6). Defendants resist this motion. (Doc. 34).

## *II.   PROCEDURAL HISTORY*

Plaintiffs filed this suit on January 14, 2016, stemming from an agreement made with Defendants in the financing of Dirks Motor Co., alleging: 1) fraud through

affirmative representations and omissions of material fact; 2) violation of 12 U.S.C. § 1972 for a prohibited "Tying Arrangement"; 3) liability of senior executive officers within the Defendant's bank due to sanctioning the fraudulent conduct of the bank's agents; 4) breach of the duty of disclosure; 5) unjust enrichment; and 6) contract rescission. (Doc. 1). A scheduling order and discovery plan was entered April 27, 2016, setting the deadline for discovery as February 15, 2017, deadline for dispositive motions as March 15, 2017, trial ready date as August 21, 2017, and the date scheduled for trial is September 18, 2017. (Doc. 14; Doc. 15 at 1). Defendants submitted their second request for production of documents on November 21, 2016, requesting "All documents, including but not limited to correspondence, letters, notes, memoranda, reports, e-mail, and any other documentation or material whatsoever, exchanged between Plaintiffs and William (Bill) Peterson which related to the facts, transactions, claims or issues in this lawsuit." (Doc. 31-1, at 1). On December 21, 2016, Plaintiffs sent a response and objection to the request claiming attorney client privilege and claimed attorney client privilege and the work product doctrine protected the documents requested which were produced after November 25, 2015. (Doc. 31-3, at 2).

### III. DISCUSSION

Plaintiffs assert that the Defendants should not be allowed to depose Peterson because attorney-client privilege attaches to communications and documents between Plaintiffs and Peterson. (Doc. 31 at 2-6). They also assert that the documents requested in Defendants' second request for production are covered by the attorney work product doctrine. *Id*.

There is no direct case law in this circuit that lays out the standard for how an attorney who is engaged in providing legal advice, but only holds an inactive license, is to be treated when applying attorney-client communications. Other courts, however, have addressed similar cases. The general rule that attorney-client privilege cannot attach where "the communication were not made with a member of the bar," with the

exception where the person asserting the privilege had a reasonable but mistaken belief that the person with whom they were communicating was in fact a licensed attorney. *See Gucci Am., Inc. v. Guess?, Inc.*, No. 09 CIV 4373 SAS, 2011 WL 9375, at *5 (S.D. N.Y. Jan. 3, 2011) (citing *United States v. Mullen & Co.*, 776 F. Supp. 620, 621 (D. Mass. 1991) ("[T]he attorney-client privilege may apply to confidential communications . . . when the client is under the mistaken, but reasonable, belief that the professional from whom legal advice is sought is in fact an attorney."); *United States v. Tyler*, 745 F. Supp. 423, 425 (W.D. Mich. 1990) (same); *United States v. Boffa*, 513 F. Supp. 517, 523 (D. Del.1981) (stating that a client who reasonably believes that an individual is an attorney "should not be compelled to bear the risk of his 'attorney's' deception and [ ] should be entitled to the benefits of the privilege as long as his bona fide belief in his counsel's status is maintained.")). *See also In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 924 (8th Cir. 1997) (discussing the approaches of other courts in applying reasonable belief standard where an attorney-client relationship did not exist, but where there was a reasonable mistake of fact by the client that the relationship did exist and communications were covered by attorney-client privilege).

The Court finds this a rational standard. It provides adequate protection to those who reasonably rely on a person's representations of being an active attorney even if that turns out to be untrue. Under those circumstances, it is appropriate for all the protections of the attorney-client relationship to attach. Additionally, the punishment should not be on the unsuspecting "client" when it comes to light the imposter is not actually licensed. On the other hand, where a "client" knows or has reason to know that the person is not actively licensed to practice law, extending the attorney-client protection to that relationship would be inappropriate.

In this case Peterson was previously an actively licensed attorney in Colorado before changing his license status to "inactive" in 2001, after moving to Florida to advise Plaintiffs. (Doc. 31-2, at 2-3). Peterson's law license remained inactive from

2001 to the present except for a short period in 2009 and 2010 when he renewed his active status in order to be admitted to practice *pro hac vice* in Florida. *Id*. at 3. The State of Colorado, where he held his only license to practice law, would not consider him eligible to practice under inactive status. *See* C.R.C.P. Sec. 227(6) (stating "[a]n attorney who has retired or is not engaged in practice shall file a notice in writing with the Clerk that he or she desires to transfer to inactive status and discontinue the practice of law . . . .. Upon the filing of the notice to transfer to inactive status, the attorney shall no longer be eligible to practice law."). Peterson was not eligible to engage in the practice of law while his law license was in inactive status and therefore could not form an attorney client relationship to which attorney-client privilege would attach. *See Gucci Am., Inc.*, No. 09 CIV 4373 SAS, 2011 WL 9375, at *5. Peterson, though technically a member of the bar, held a license which was inactive and he was not considered eligible to engage in the practice of law under the Colorado code, therefore attorney-client privilege could not have attached to his communications with Plaintiffs. As mentioned above there is a reasonable belief exception to the principle that attorney-client privilege cannot attach where the legal advice is given by an individual not admitted to the bar.

The burden to demonstrate the requisite relationship existed between the attorney and the client to which privilege could attach, is on the party asserting the privilege. "[T]he party who claims the benefit of the attorney-client privilege has the burden of establishing the right to invoke its protection." *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985) (citing *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir.1978) (en banc); *Bouschor v. United States*, 316 F.2d 451, 456 (8th Cir.1963)) (finding the district court did not err in granting the motion to compel the deposition of attorney where the asserting party "adduced no evidence to support their assertion of the privilege.").

The same burden applies to this case. Plaintiffs bear the burdern to prove that they reasonably believed Peterson was eligible to practice law. Plaintiffs have not

4

produced any evidence demonstrating Plaintiffs had a reasonable belief Peterson was licensed to engage in the practice of law after 2001. In fact, there is evidence in the record which would tend to negate any assertion that Plaintiffs were under the mistaken belief Peterson was licensed to practice law. Peterson's declaration submitted to the court with the present motion, states, "with [Plaintiffs] knowing, and agreeing to the fact, I would not likely renew my 'active' attorney registration in Colorado." (Doc. 31-2, at 3). Additionally, Plaintiffs identified Peterson in his declaration to the Office of the Comptroller of the Currency to be a "Lucken consultant." (Doc. 34-2). Peterson similarly refers to himself as a "Business consultant to John E. Lucken" in a document submitted to the OCC on Plaintiffs' behalf. (Doc. 34-3). Plaintiffs have not carried their burden to establish they held a reasonable belief that Peterson was a licensed attorney authorized to practice law, and therefore able to form a valid attorney-client relationship upon which privilege can be invoked.

Additionally, the work product doctrine does not protect the documents produced by Peterson from disclosure to the defendants. "The essential element of each case, however, is that the attorney was preparing for or anticipating some sort of adversarial proceeding involving his or her client." *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d at 924. As with attorney-client privilege, discussed above, to establish the attorney-client relationship with an attorney who is not licensed to practice, there must be a reasonable belief that the "attorney" was in fact an attorney licensed to practice. As discussed above, there is little evidence in the current record to support the conclusion that Plaintiffs' held a reasonable belief that Peterson held a license to practice and in fact there is evidence to the contrary. As no attorney client relationship existed, any documents prepared by Peterson cannot be claimed to fall under the work product doctrine as Plaintiffs had not formed a valid attorney client relationship with Peterson.

Because Plaintiffs have not carried their burden, Defendants may depose Peterson, and pose any questions relevant to the issues in the suit relating to his

communications with Plaintiffs. As Defendants timely submitted their second request for production of documents (Doc. 31-1) to Plaintiffs on November 21, 2016, requesting "Documents and Material Exchanged between Plaintiffs and William Peterson" and those documents are not covered by attorney-client privilege or the work product doctrine, Plaintiffs must respond to the request. The close of the written discovery period is February 15, 2017. Plaintiffs will have until February 28, 2017, to respond to Defendants' Second Request for Production of Documents (Doc. 31-1).[1]

### IV. CONCLUSION

For the reasons set forth above, the Court **denies** Plaintiffs' motion for a protective order. (Doc. 31).

**IT IS SO ORDERED** this 15th day of February, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa

---

[1] The court set this deadline with the extended discovery deadline for depositions of March 15, 2017, in mind, in order to give Defendants two weeks to depose Peterson after the requested documents have been produced.