# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| THE JOHN ERNEST LUCKEN REVOCABLE TRUST, and JOHN LUCKEN and MARY LUCKEN, Trustees, <br><br> Plaintiffs, <br><br> vs. <br><br> HERITAGE BANCSHARES GROUP, INC., HERITAGE BANK NATIONAL ASSOCIATION, THOMAS GEIGER and GARY GEIGER, directors of Heritage Bank, ROBERT MATHIASEN, Chief Credit Officer of Heritage Bank, and DOES 1-100, <br><br> Defendants. | No. C16-4005-MWB <br><br> **OPINION AND ORDER REGARDING PLAINTIFFS' APPEAL OF MAGISTRATE JUDGE'S ORDER REGARDING PLAINTIFFS' MOTION FOR PROTECTIVE ORDER** |

_____

Plaintiffs appeal of a magistrate judge's order denying their Motion for Protective Order requires me to determine if that order was clearly erroneous.

## I.     INTRODUCTION AND BACKGROUND

On January 14, 2016, plaintiffs the John Ernest Lucken Revocable Trust ("the Trust"), and John Lucken and Mary Lucken, trustees of the Trust filed a Complaint against defendants Heritage Bancshares Group, Inc. ("the Bank") and the Bank's directors and chief credit officer, alleging claims for: 1) fraud through affirmative representations and omissions of material fact; 2) violation of 12 U.S.C. § 1972 for a prohibited "Tying Arrangement"; 3) liability of the Bank's senior executive officers; 4) breach of the duty of

disclosure; 5) unjust enrichment; and 6) contract rescission.[1]  These claims all arise from an agreement between the Trust and the Bank for the financing of Dirks Motor Co.

Pursuant to a Stipulated Scheduling Order and Discovery Plan, defendants made a request for production of documents, requesting "All documents, including but not limited to correspondence, letters, notes, memoranda, reports, e-mails, and any other documentation or material whatsoever, exchanged between Plaintiffs and William (Bill) Peterson which relate to the facts, transactions, claims or issues in this lawsuit."  Docket no. 31-1, at 1. Plaintiffs objected to the request, claiming attorney client privilege and the work product doctrine protected the requested documents.  On January 19, 2017, plaintiffs filed a Motion for a Protective Order (docket no. 31).  In their motion, plaintiffs seek a protective order preventing defendants from deposing Peterson, who advised plaintiffs on several projects, but who has not held an active law license since 2001, except for one short period.  Plaintiffs argue that Peterson's file and communications with them are protected by attorney client privilege and the work product doctrine.  Plaintiffs' motion was referred to United States Magistrate Judge C.J. Williams.

Judge Williams denied plaintiffs' motion.  Judge Williams found that plaintiffs failed to meet their burden of proving that they reasonably believed Peterson was eligible to practice law at the time he advised them.  Having found no attorney client relationship existed, Judge Williams concluded that any documents prepared by Peterson did not fall under the work product doctrine.  Accordingly, Judge Williams denied plaintiffs' Motion for Protective Order.

---

[1] Plaintiffs filed an Amended Complaint on March 1, 2017, asserting the same six claims against defendants.  The Amended complaint also names John Doe defendants and contains additional factual details.

## II.  LEGAL ANALYSIS

### A.  Standard Of Review

The pertinent parts of the statute and rules authorizing the powers of a United States magistrate judge, 28 U.S.C. § 636(b)(1)(A), Rule 72(a) of the Federal Rules of Civil Procedure, and N.D. IA. L.R. 72.1, all provide for review by a district judge of a magistrate judge's order on non-dispositive motions assigned to him or her to which objections have been filed.  Where a litigant does not file a timely objection to a magistrate judge's order, triggering review by a district judge, the litigant "may not challenge the [magistrate judge's] order on appeal."  *McDonald v. City of Saint Paul*, 679 F.3d 698, 709 (8th Cir. 2012).  "Matters concerning discovery generally are considered 'nondispositive' of the litigation."  *Thomas E. Hoar, Inc. v. Sara Lee Corp*., 900 F.2d 522, 525 (2d Cir. 1990); *see Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997) ("Discovery is a nondispositive matter."); *Haines v. Liggett Group, Inc.,* 975 F.2d 81, 92 (3d Cir. 1992) ("It is undisputed that the proper standard of review for discovery orders is the 'clearly erroneous or contrary to law' standard.").

Section 636(b)(1)(A) and Rule 72(a) both specify that such review allows the district judge to modify or set aside any parts of the magistrate judge's order that are "clearly erroneous or contrary to law."  *See also Ferguson v. United States*, 484 F.3d 1068, 1076 (8th Cir. 2007) ("A district court may reconsider a magistrate judge's ruling on nondispositive pretrial matters where it has been shown that the ruling is clearly erroneous or contrary to law."  (citing § 636(b)(1)(A)).  Although the Eighth Circuit Court of Appeals does not appear to have clarified the meaning of "clearly erroneous" in the context of a district court's review of a magistrate judge's ruling, the appellate court's formulation of the "clearly erroneous" standard for its own review of a lower court's ruling is as follows:

> A district court clearly errs if its findings are "not supported by substantial evidence in the record, if the finding[s are] based on an erroneous view of the law, or if we are left with the definite and firm conviction that an error has been made."

3

>*Ostenfeld ex rel. Estate of Davis v. Delo*, 115 F.3d 1388, 1393
>(8th Cir. 1997).

*Story v. Norwood*, 659 F.3d 680, 685 (8th Cir. 2011). Like other courts, I have read "contrary to law" within the meaning of Rule 72(a) and, hence, § 636(b)(1)(A)), to mean failure to apply or misapplication of relevant statutes, case law, or rules of procedure. *See United States v. Melton*, 948 F. Supp. 2d 998, 1002 (N.D. Iowa 2013) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)). "A party seeking to overturn a discovery order . . . bears a heavy burden. Pursuant to this highly deferential standard of review, magistrates are afforded broad discretion in resolving discovery disputes. . . ." *Botta v. Barnhart*, 475 F. Supp.2d 174, 185 (E.D.N.Y. 2007) (internal quotations and citations omitted); *see Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 764 (8th Cir. 1995) ("[A] magistrate is afforded broad discretion in the resolution of nondispositive discovery disputes."); *see also Jones v. City of Elkhart*, 737 F.3d 1107, 1114 (7th Cir. 2013) (noting that magistrates "enjoy extremely broad discretion in controlling discovery."); *Detection Systems, Inc. v. Pittway Corp.*, 96 F.R.D. 152, 154 (W.D.N.Y. 1982) (instructing that "in resolving discovery disputes, the Magistrate is afforded broad discretion which will be overruled only if abused.").

### B.   Attorney-Client Privilege Analysis

I find nothing clearly erroneous or contrary to law in Judge Williams's ruling that plaintiffs' communications with Peterson are not privileged and must be disclosed. The general rule is that only communications between a represented party and that party's licensed attorneys are subject to attorney-client privilege. *See Anwar v. Fairfield Greenwich Ltd.*, 982 F.2d 260, 265 (S.D.N.Y. 2013) ("The general rule under United States law is that only communications between a represented party and that party's licensed attorneys are subject to attorney-client privilege."); *Wultz v. Bank of China Ltd.*, 979 F. Supp.2d 479, 486–88, No. 11 Civ. 1266, 2013 WL 5797114, at *3 (S.D.N.Y. Oct. 25, 2013)

4

("In order to prevail on an assertion of the attorney-client privilege the party invoking the privilege must show that: . . . (2) the person to whom communication was made (a) is a member of the bar of a court, or his subordinate"); *see also Malletier v. Dooney & Bourke, Inc.*, No. 04 Civ. 5316, 2006 WL 3476735, at *17 (S.D.N.Y. Nov. 30, 2006) ("American law . . . gives no protection to the communications of an unlicensed attorney."). Plaintiffs, as the party asserting privilege, bear the burden to demonstrate that the requisite relationship existed between Peterson and the Trust, to which privilege could attach. "[T]he party who claims the benefit of the attorney-client privilege has the burden of establishing the right to invoke its protection." *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985) (citing *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1978) (en banc).

Plaintiffs contend that the communications between them and Peterson are privileged because, even though Peterson did not hold an active license, plaintiffs had a reasonable belief that Peterson was acting as their attorney. "Notwithstanding the general rule that the attorney client privilege applies only to licensed attorneys, courts have found communications with non-attorneys to be privileged in limited circumstances in which the client 'reasonab[ly] believe[s] that the person to whom the communications were made was in fact an attorney.'" *Anwar Greenwich Ltd.*, 305 F.R.D. 117, 120 (S.D.N.Y. 2013) (alterations in original) (quoting *Gucci Am., Inc. v. Guess?, Inc.*, No. 09 Civ. 4373, 2011 WL 9375, at *2 (S.D.N.Y. Jan. 3, 2011)); *see In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 923 (8th Cir. 1997) (collecting cases in which a party's reasonable mistake of fact provides exception to general rule that only communications with a licensed attorney representing that party are covered by attorney-client privilege); *United States v. Rivera*, 837 F. Supp. 565, 568 n. 1 (S.D.N.Y.1993) ("It is common ground among the parties that the attorney client privilege attaches to confidential communications made to an individual in the genuine, but mistaken, belief that he is an attorney."). The flaw in plaintiffs' argument is that it is undisputed that Peterson did not hold an active license to

practice law when he advised plaintiffs and plaintiffs were aware of his law license's inactive status. Peterson avers that plaintiffs knew and agreed "to the fact, I would not likely renew my 'active' attorney registration in Colorado." Peterson Declaration at 3. Neither plaintiff trustee has submitted an affidavit or other sworn statement contradicting Peterson's declaration.

Plaintiffs attempt to buttress their argument by pointing me to Peterson's supplemental declaration is to no avail. That declaration was not presented to Judge Williams, even though it could have been. Generally, courts will not consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. *Praileau v. Fischer*, 930 F. Supp.2d 383, 387 (N.D.N.Y. 2013) (noting that "a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance."); *Chalasani v. Daines*, No. 10–CV–1978, 2011 WL 4465408, at *1 n. 3 (E.D.N.Y. Sept. 26, 2011) ("Generally, courts do not consider such 'new arguments' or new evidence 'raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not' and the Court declines to do so."); *see also Illis v. Artus*, No. 06–CV–3077, 2009 WL 2730870, at *1 (E.D.N.Y. Aug. 28, 2009) ("In this district and circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." (internal quotation marks omitted)). Thus, "a district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation." *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000). Although "the court 'must actually exercise its discretion' rather than simply ignore the evidence or reject it *sub silentio*," it is within my discretion "not to consider evidence offered for the first time in a party's objections to a magistrate judge's proposed findings and recommendations. . . ." *Jones v. Blanas*, 393 F.3d 918, 935 (9th Cir. 2004) (quoting *Brown v. Roe,* 279 F.3d 742, 744 (9th Cir. 2002). Courts have

6

observed that requiring a district court to consider evidence not previously presented to the magistrate judge "would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court." *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000).

> Systemic efficiencies would be frustrated and the magistrate judge's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round. In addition, it would be fundamentally unfair to permit a litigant to ... wait to see which way the wind was blowing, and - having received an unfavorable recommendation - shift gears before the district judge.

*Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Elec. Co.*, et al., 840 F.2d 985, 991 (9th Cir. 1988). Exercising my discretion, I decline to consider Peterson's supplemental declaration because it was not presented to Judge Williams, even though it could have been.

Thus, on the record before Judge Williams, plaintiffs cannot credibly argue that they were reasonably mistaken as to Peterson's licensure status and Judge Williams's ruling, that plaintiffs' communications with Peterson are not privileged and must be disclosed, is neither clearly erroneous or contrary to law. Judge Williams's order denying plaintiffs' Motion for Protective Order is affirmed.

### III.   CONCLUSION

For the reasons discussed above, Judge Williams' order denying plaintiffs' Motion for Protective Order is not clearly erroneous or contrary to law, and plaintiffs' appeal of this ruling is overruled. Therefore, Judge Williams's order denying plaintiffs' Motion for Protective Order is affirmed.

**IT IS SO ORDERED**.

**DATED** this 23rd day of March, 2017.

Mark W. Bennett

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA