# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| THE JOHN ERNST LUCKEN REVOCABLE TRUST, and JOHN LUCKEN and MARY LUCKEN, Trustees, JOHN LUCKEN, MARY LUCKEN,<br><br>Plaintiffs,<br><br>vs.<br><br>HERITAGE BANKSHARES GROUP, INC., et al.,<br><br>Defendants. | No. 16-CV-4005-MWB<br><br>**ORDER** |

## I.    INTRODUCTION

The matter before the Court is plaintiffs' motion to compel discovery from defendants Heritage Bankshares Group, et al. (Doc. 43). On February 8, 2017, plaintiffs filed a motion to compel discovery, stating that defendants did not adequately respond to plaintiffs' request for production of documents and request for specific documents under several requests for production. Plaintiffs request the imposition of sanctions in the form of additional depositions outside the discovery period. Defendants resist plaintiffs' motion. (Doc. 46).

## II.    PROCEDURAL HISTORY

Plaintiffs filed this lawsuit on January 14, 2016. (Doc. 1). On April 27, 2016, the Court adopted the parties' agreed-upon scheduling order that, among other things, set the deadline for discovery as February 15, 2017. (Doc. 14). The Court later amended this order pursuant to plaintiffs' motion for a protective order seeking to prevent the

1

deposition of William Peterson and release of his files, claiming attorney client privilege and work product protection. (Doc. 31). The order denying that motion also extended the deadline for plaintiffs' response to defendants' second request for production as it related to Mr. Peterson's documents. (Doc. 44). The Court entered another order granting a motion to extend deadlines for depositions to March 15, 2017, but denied any extension of the deadlines for written discovery other than that previously ordered for response to defendants' second request for production. (Doc. 45).

In an attempt to confer and resolve the discovery disputes that have arisen and are the subject of this motion to compel, plaintiffs initially sent a letter to defendants on October 25, 2016. (Doc. 43-3). In the letter, plaintiffs attempted to confer about responses to plaintiffs' first request for production of documents (Doc. 43-1) that plaintiffs felt were inadequate such as responses by defendants stating, "Defendant [sic] produced these documents as part of initial disclosures," but where defendants did not reference bate numbers. (Doc. 43-3, at 1). In this letter, plaintiffs also requested many of the specific documents plaintiffs now request the Court compel defendants to produce. *Id.*, at 2. Plaintiffs requested documents under RFP Nos. 3.1, 3.3, 3.5-9, 4, and 7-9, which are all addressed in plaintiffs' current motion to compel discovery. (Doc. 43-3, at 2-4; Doc. 43).

The parties subsequently met in person on November 7, 2016, regarding the discovery dispute. (Doc. 43-4). Defendants followed this meeting with a letter on November 21, 2016, claiming that some of the documents requested by plaintiffs were privileged and would not be disclosed, but were indicated in defendants' privilege log. (Doc. 43-4, at 1-2). Plaintiffs do not challenge the privilege of these documents in their current motion. (Doc. 43). Defendants' letter stated in response to the specific RFPs noted by plaintiffs that defendants had either provided the documents, did not possess them, or would inquire further with their client to locate the requested documents. (Doc. 43-3).

2

On February 1, 2017, plaintiffs advised defendants in an email that they found defendants' responses continually deficient and anticipated filing a motion to compel no later than February 6, 2017. (Doc. 43-6). On February 6, 2017, defendants submitted to plaintiffs their third supplemental response to plaintiffs' first request for production of documents. (Doc. 43-8). On February 8, 2017, plaintiffs filed the instant motion. (Doc. 43). Plaintiffs included an affidavit from attorney Daniel Shuck, who has now withdrawn with permission from the Court from the case, stating that plaintiffs in good faith conferred personally with defendants' counsel before filing this motion to compel. (Doc. 43-9).

### III.   DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

Rule 26(b) is widely acknowledged as "liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence." *Hofer v. Mack Trucks*, Inc., 981 F.2d 377, 380 (8th Cir. 1992) (internal citation omitted). Also, in the context of discovery the standard of relevance is "broader" than in the context of admissibility. *Id*. (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)). Yet "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Id*. Rule 401 of the Federal Rules of Evidence reads: "[e]vidence is relevant

if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. A discovery request "should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Catipovic v. Turley*, No. C11-3074, 2013 WL 1718061, at *2 (N.D. Iowa Apr. 19, 2013) (internal quotation marks and citation omitted) (unreported).

The burden of making a threshold showing of relevance is on the party requesting discovery. *See Seger v. Ernest-Spencer Metals, Inc.*, No. 8:08CV75, 2010 WL 378113, at *2 (D. Neb. Jan. 26, 2010). When a requesting party makes a threshold showing of relevance, then the burden shifts to the party objecting the motion to compel. *See Continental Illinois Nat. Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.") (internal citation omitted). The party objecting has the burden to "substantiate its objections." *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000) (internal quotation marks and citation omitted). A mere statement by the objecting party that the "request for production was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection." *Id*. (internal quotation marks and citation omitted). Instead, the objecting party must prove that the "requested documents either do not come within the broad scope of relevance defined pursuant to FED. R. CIV. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Id*. (quoting *Burke v. New York City Police Dept.*, 115 F.R.D. 220, 224 (S.D. N.Y. 1987)).

### A. MEET AND CONFER REQUIREMENT

The meet and confer requirement set out in Federal Rule of Civil Procedure 37(a) requires the parties meet and confer about discovery disputes before they request judicial intervention in the form of a motion to compel. FED. R. CIV. P. 37(a)(1). *See also* Local Rule 37(a) ("An exchange of written communications or a single telephone message will not, by itself, satisfy the requirements of this section."); *Robinson v. Potter*, 453 F.3d 990, 995 (8th Cir. 2006) ("Before the court can rule on a motion, the parties must demonstrate they acted in good faith to resolve the issue among themselves."). As described above, the parties conferred through letter and email communications on multiple occasions about the specific requests for production that plaintiffs now request the Court to compel in their motion. Additionally, the parties had an in person meet and confer meeting in an attempt to solve the discovery disputes. The Court finds that the parties conferred in good faith and plaintiffs have met the meet and confer requirement to bring their motion to compel.

### B. ADEQUACY OF PRODUCTION

For purposes of clarity and organization, the Court will address each of plaintiffs' allegations of deficient production and defendants' response thereto individually and in order as they are set out in plaintiffs' motion. The Court also notes that defendants do not contest, in their response, the relevance of any of the documents requested in plaintiffs' motion to compel.

An ongoing contention between the parties is paragraph 9 of plaintiffs' motion requesting "policies and procedures" specifically those in effect in or after 2009. (Doc. 43, at 7). Defendants state they have now produced the policies and procedures from 2009, which were discovered in the "repository," in addition to policies and procedures from October 2012, November 2014, and the current policies. (Doc. 46, at 5; Doc. 43-7). Given that Defendants have produced versions of the Banks' policies and procedures from 2009, Oct. 2012, Nov. 2014, and present policies and procedures, this production

seems to respond to plaintiffs' request for policies and procedures from 2009 to 2012 and specifically the Oct. 2012 policies. The Court recognizes that defendants were not entirely diligent or expedient in their efforts to locate these documents, which they initially claimed did not exist, were thrown away, and later found and produced days before this motion was filed. However, other than defendants' lack of diligence, plaintiffs have not given the Court any other reason to believe that defendants acted improperly or have in their possession additional policies and procedures that would be responsive to plaintiffs' request. Because defendants have produced the policies and procedures outlined above, the Court considers this request in plaintiffs' motion resolved.

The Court notes that for the requests in paragraphs 10(a) through 10(d), plaintiffs use the deposition of Sterling Crim to support plaintiffs' contention that defendants' possess the documents requested in those paragraphs. (Doc. 43, at 7). Defendants assert that Crim is a former employee of the bank, has not worked at the bank in several years, and has not been involved in the document production process. (Doc. 46, at 7). The deposition of Mr. Crim indicates only that Mr. Crim believed certain documents would have been created in the course of business at the bank while Mr. Crim was employed there. Mr. Crim did not testify that he personally created any of the documents requested by plaintiffs. Although Crim's testimony is evidence that the documents plaintiffs seek may have been created in the ordinary course of business five or more years ago, it is not evidence that defendants are currently in possession of those documents.

Paragraph 10(a) seems to seek documents requested under plaintiffs' RFP no. 3.6, which requested "The Bank's directors loan committee minutes, credit committee minutes, Special Assets Team minutes, officer loan committee minutes and Bank officer comments to file for the SBA Loan and/or prior extensions of credit to Dirks Motor and/or the Dirks parties." (Doc. 43-1, at 8). This request appears to request all minutes and comments from the various parties mentioned in the request as they relate to Dirks Motor or the Dirks parties. Defendants respond that they "have produced minutes of all meetings it can find mentioning Dirks or Lucken." (Doc. 46, at 6). As plaintiffs have

produced no evidence to refute defendants' claim that they have produced these minutes, the Court does not find that defendants were deficient in complying with plaintiffs' request for production of these documents.

Paragraph 10(b) seeks for the Court to compel defendants to produce any internal and external loan reviews as they relate to Dirks Motor or the Dirks Parties. (Doc. 43, at 7). Defendants respond that they produced a loan review performed by HL Lenders as part of initial disclosures. (Doc. 46, at 6). Defendants also assert that plaintiffs' Requests 3.7 and 3.8, which plaintiffs cite to support their request to compel production, do not request those documents. *Id*. Request No. 3.8 requests "[t]he Bank's loan audit reports." (Doc. 43, at 7).

Defendants seem to argue that the documents requested by plaintiffs in their motion are "loan reviews," while the documents requested in RFP No. 3.8 are "loan audit reports." The Court sees little distinction between the words "audit" and "review" as they apply to the inspection of loans and believes that what plaintiffs refer to as "loan audit reports" in Request 3.8 is the same document as requested by plaintiffs in paragraph 10(b). Defendants acknowledge they possess at least one additional loan audit report from April 2010. The Court finds that these documents are relevant to the issues presented in this case to demonstrate the bank's knowledge of the status of the Dirks loan. The Court orders the production of the April 2010 report authored by Solution Enterprises, if it has not already been produced, as well as any other loan audits or loan review reports, both internal and external, which reference Dirks Motor or the Dirks Parties to the extent they have not already been produced, and if they have been produced to identify them by bates number. In the event there are no other reports in defendants' possession responsive to the request, defendants shall affirmatively state as such.

In paragraph 10(c) plaintiffs request quarterly Classified Asset Reports for substandard loans. (Doc. 43, at 7). Defendants respond that they have produced "Problem Loan Reports." (Doc. 46, at 7). It is unclear to the Court whether defendants are claiming that these problem loan reports are the documents sought by plaintiffs or if

defendants do not possess the specific documents requested by plaintiffs and have produced documents which were most closely analogous to those sought by plaintiffs. *Id*. The Court finds, and defendants do not contest, that these documents are relevant to the issue of defendants' knowledge of the status of the Dirks Loan. Therefore, to the extent that defendants have not produced the "Classified Asset Reports" for substandard loans in the production of Problem Loan Reports, defendants must produce them now, identified by bates number if already produced, or defendants must make an affirmative statement that they do not possess the requested reports.

In paragraph 10(d) plaintiffs request Credit Committee, Compliance Committee, Special Assets Team minutes and notes as well as ALLL "calculations." (Doc. 43, at 7-8). Defendants respond, "[a]ll committee notes and minutes have been labeled, produced and identified by bate-stamp number . . .. There are no ALLL calculations that specifically relate to Dirks or Lucken . . .. The banks [sic] ALLL calculations relate to the bank as a whole, not to Dirks and Lucken as requested." (Doc. 46, at 7-8). The Court has no reason to believe that defendants have not produced all of the committee notes and minutes that are in their possession. Therefore, the Court finds defendants substantially complied with the request for production of documents.

Defendants seem to claim the ALLL calculations are outside the scope of the request of RFP No. 3.7 because the request specifically states "to the Dirks parties" and the ALLL calculations possessed by defendants pertain to the bank as a whole. Additionally, as defendants state in response to paragraph 14(d), the ALLL calculations for the bank have been produced, but redacted as to information not pertaining to the parties. (Doc. 46, at 11). Although defendants state that there is no information in the "ALLL" calculation documents as they pertain to the Dirks parties or Lucken, which may mean that the entire document is redacted, RFP 3.7 does specifically request documents as they pertain to the SBA Loan or the Dirks parties. If defendants have produced the ALLL calculations with confidential information redacted, but have left any

8

information relating to the parties or the SBA loan not redacted, which may include no information in the document, then defendants have complied with the request of RFP 3.7.

Paragraph 12(a) requests "Board records, loan and credit committee records, and Bank officer comments to file documenting approval of the $329,000 of Pre-SBA Loans to the Dirks Parties in 2009; (2) the $1,775,000 SBA Loan." (Doc. 43, at 9). Defendants respond that there are no other records that relate to the approval of these loans other than the document that has already been produced labeled "New Loans for Month 07/31/09-08/02/09." (Doc. 46, at 8). The Court has no reason to believe defendants are being untruthful in their assertion that this is the only document relating to the approval by the Board, committees, or officers of the loans in question. Therefore, the Court finds that defendants have complied with this request.

Paragraph 12(b) requests the risk rating and collateral records, showing the collateral position of the bank, with respect to the $329,000 of Pre-SBA loans to the Dirks in 2009. (Doc. 43, at 9). Defendants state the "notes for these loans were bate-stamped and identified in the index. Each note identifies the collateral backing the note . . .. Both notes and security documents were produced as part of the Dirks file in initial disclosures." (Doc. 43, at 8). Defendants' reply seems to be that they have produced the documents requested by plaintiffs under paragraph 12(b). Again, without evidence from plaintiffs to the contrary, the Court believes defendants have produced all documents responsive to plaintiffs' request and finds their response satisfactory.

In paragraph 12(c) plaintiffs request "[a]ll calendars and meeting notes for senior executive officers and Crim in 2009 with respect to the Pre-SBA Loans." (Doc. 43, at 9). Defendants state: "No electronic calendars appear to have been kept by any senior executive officers and Crim, and paper calendars cannot be located." (Doc. 46, at 8). The Court has no reason to believe that defendants are in possession of these documents and therefore the Court finds that defendants have complied with the request.

The request in paragraph 13(a) is similar to the request under 12(a) and requests Board, committee, and officer comments to file documenting approval of the Oct. 6,

2009 SBA "Loan Authorization" and closing the $1,775,000 SBA Loan on the terms it was closed. (Doc. 43, at 9-10). Defendants respond that these documents do not exist. (Doc. 46, at 8). Again, the Court has no reason to disbelieve defendants' assertion and finds defendants have substantially complied with the request.

Plaintiffs request in paragraph 13(b) seeks all SBA loan risk ratings and collateral records which value the collateral for the SBA loan. (Doc. 43, at 10). Defendants state they have provided all documents which are responsive to this request. (Doc. 46, at 9). Defendants back this assertion by stating that the documents identifying the collateral and its value for the SBA loan were used during depositions. *Id.* Again, plaintiffs have not produced any evidence that would tend to disprove defendants' claim the documents were produced and that defendants have produced all responsive documents in their possession.

In paragraph 13(c) plaintiffs request documents related to the amendment of the SBA Loan Authorization contract that reduced or eliminated $67,000 for Dirks Motor working capital, increased the Bank refinancing from $194,000 to $329,000 and a modification or waiver by the SBA of the SBA Loan Authorization collateral condition. (Doc. 43, at 10). Defendants respond that defendants produced its entire paper file on the SBA Loan as it was kept in the usual course of business . . . . With regard to the specific amendments in this request, Defendants cannot locate any." (Doc. 46, at 10). The Court has no reason to believe defendants have not produced all documents that they possess regarding the SBA Loan Authorization file or that they do in fact possess the documents related to the amendments and therefore finds defendants' production satisfactory. (Doc. 46, at 10).

In paragraph 13(d), plaintiffs request the missing pages of the "Secondary Participation Guaranty Agreement," and defendants state that after contacting a third party they have located the missing pages of the document and produced them. (Doc. 43, at 10; Doc. 46, at 10). As the requested documents have been produced, the Court need not discuss this request further and considers the matter resolved for purposes of this motion.

Paragraph 13(e) is a request by plaintiffs for the Court to compel defendants to produce board records, committee records, and Bank officer comments to file "documenting approval of the assignment of guaranteed portion of the SBA Note to registered holder Comvest." (Doc. 43, at 10). Defendants respond that these documents do not exist. (Doc. 46, at 10). Plaintiffs have produced no evidence that these documents do exist and are being withheld by defendants, and therefore the Court has no reason to disbelieve defendants.

Paragraph 13(f) requests "[a]ll calendars and meeting notes for senior executive officers and Crim in 2009 and 2010 with respect to the SBA Loan." (Doc. 43, at 11). Defendants' response is the same to this request for calendars as for their request for calendars under paragraph 12(c) which is that defendants do not have the requested calendars. (Doc. 46, at 10). Plaintiffs have made no showing that these calendars are in defendants' possession and so the Court finds defendants complied with the request.

Paragraph 14(a) requests the Court to compel defendants to produce "Board records, loan and credit committee records, and Bank officer comments to file . . . re Bank approval of a transfer of the SBA Loan to another Bank in July-August 2011." (Doc. 43, at 11). Defendants respond that they never were in possession of a letter or board or committee documents related to the approval of a transfer of the loan to another bank. (Doc. 46, at 11). There is nothing in the record to indicate that defendants are in possession of these documents and the Court has no reason to disbelieve defendants and therefore finds defendants complied with the request.

In paragraph 14(b), plaintiffs request board records, loan and credit committee records, Special Asset Committee records and Bank officer comments to file regarding bank approval of deferral of a notice or liquidation to the SBA or if there was no deferral, produce records re a notice of liquidation to the SBA, the 2011 notice of default letter to Dirks, and the Bank's taking of earned interest on Dirks CD SBA Loan collateral in and after October 2011. (Doc. 43, at 11). Defendants respond stating that this is a new request for documents not covered under RFP No. 3.6, which requests generally meeting

11

minutes related to Dirks Motor or the Dirks parties. (Doc. 46, at 11.). Defendants further state that they have identified, labeled and provided all minutes found mentioning Dirks and have fully complied with RFP No. 3.6. *Id*. The Court agrees that plaintiffs' request under paragraph 14(b) does not fall within the documents requested under RFP No. 3.6. However, after reviewing plaintiffs' request for production, the Court has determined that the requested documents do fall under RFP No. 1 or RFP No. 2 depending on where the documents were stored.

RFP No. 1 requests "[a]ll documents and things in Defendants' SBA Loan file." (Doc. 43-1, at 7). RFP No. 2 requests "[a]ll documents and things not contained in Defendants' SBA Loan file, including email correspondence, relating in any way to Dirks Motor business dealings with the Bank . . . which were not produced in the DID." *Id*. Documentation regarding a deferral of a notice of liquidation or alternatively a notice of liquidation, a notice of default letter to Dirks, and documentation of seized collateral seem to be the types of records that would be contemplated by these requests. Additionally, because these documents are directly related to the SBA Loan, which is a central issue in this litigation, defendants were on notice that these documents may be requested. With respect to the documents in paragraph 14(b) of plaintiffs' motion, the Court orders defendants to disclose these documents.

Paragraph 14(c) requests 1502 reports, which defendants state they have produced, despite there being no mention of the Dirks parties in the reports. (Doc. 43, at 11; Doc. 46, at 11). The Court considers this dispute resolved for the purposes of the current motion.

Paragraph 14(d) requests SBA Loan "ALLL" calculations for the time period of September 2001 to April 2012. (Doc. 43, at 11). Defendants respond that they have produced all of the "ALLL" reports for the bank as a whole, but have redacted the information in those reports as none of them mention Dirks and RFP No. 3.7 only requests those documents as they relate to Dirks and Lucken through RFP 4. (Doc. 46, at 11). RFP No. 3.7 does seem to contemplate all three types of documents as they relate

to the Dirks parties or the SBA loan. (Doc. 43-1, at 7). As defendants have provided redacted copies of the banks' "ALLL" reports to protect the confidential information of other customers and no "ALLL" calculations relate to the Dirks parties specifically, defendants have produced the documents responsive to RFP 3.7 as the request relates to the ALLL calculations. The Court finds defendants' production is not deficient with respect to these documents.

Plaintiffs request in paragraph 14(e) "[a]ll Special Asset Committee records re the SBA Loan from April 2011 to April 2012." (Doc. 43, at 12). Defendants state they have labeled and provided all the responsive documents that it has in its possession. (Doc. 46, at 11). The Court has not been provided by plaintiffs any evidence to believe that defendants possess documents that have not been produced and therefore finds defendants have complied with the request.

In paragraph 14(f) plaintiffs request "[a]ll SBA loan risk rating and collateral records, including collateral analysis/valuations from April 2011 to April 2012, including, but not limited to all quarterly "Classified Asset Reports" for "substandard" loans." (Doc. 43, at 12). Defendants state the requested documents do not fall under RFP 3.1 and that this is a narrow request that they have not had ample opportunity to confer on with plaintiffs' counsel. (Doc. 46, at 12). However, defendants are mistaken as to which RFP plaintiffs request their documents under. In their motion, Plaintiffs cite RFP No. 3.7 to support their request under paragraph 14(f). (Doc. 43, at 12). No. 3.7 requests collateral evaluations and credit risk rating history for the life of the SBA loan and prior extensions of credit to the Dirks parties. (Doc. 43-1, at 8). While the request in the motion requests some specific types of documents such as "Classified Asset Reports" for substandard loans, RFP No. 3.7 seems to clearly contemplate the documents requested under paragraph 14(f).

> A request for production of documents must describe the documents requested with 'reasonable particularity.' *See* FED. R. CIV. P. 34(b) (stating that the request shall be set forth with "reasonable particularity.") . . .. Therefore, the party requesting the production of documents must

13

provide "sufficient information to enable [the party to whom the request is directed] to identify responsive documents.

*St. Paul Reinsurance Co.*, 198 F.R.D. at 514 (internal citations omitted).

RFP No. 3.7 requests "[t]he Bank's ALLL calculation, collateral evaluations, credit risk rating" which would seem to include the subject matter of the request in paragraph 14(f) of plaintiffs' motion requesting, "SBA loan risk rating and collateral records, including collateral analysis/valuations from April 2011 to April 2012, including, but not limited to all quarterly 'Classified Asset Reports' for substandard loans." (Doc. 43; Doc. 43-1, at 8). Loan risk ratings and collateral records seem to fall squarely within RFP 3.7's request. Additionally, the Court finds that the more specific documents (as they fall under the more general categories of "collateral evaluations" and "credit risk rating" documents) were requested with reasonable particularity. Therefore, the Court orders defendants to produce the documents requested in paragraph 14(f) of plaintiffs' motion to the extent that they are not duplicative of documents already produced, or in the alternative to give the bates numbers of documents already produced, or affirmatively state that the documents do not exist or are not in defendants' possession.

Paragraph 14(g) requests Board minutes approving extensions to comply with the OCC report of examinations relating to the SBA loan. (Doc. 43, at 12). Defendants state that they have produced all committee minutes that exist and the specific ones requested by plaintiffs here do not exist. (Doc. 46, at 12). This has been defendants' consistent response for specific requests for board minutes throughout their response to plaintiffs' motion and the Court has no reason to disbelieve their assertion that all responsive documents in its possession have been produced. Plaintiffs offer no evidence to the contrary and therefore the Court has no reason to disbelieve defendants' response and find that defendants have responded to the request adequately.

In paragraph 14(h) plaintiffs request bank audit reports and non-accrual and charge off forms related to the SBA loan from September to November 2011. (Doc. 43, at 12). Defendants state that they have produced a loan charge off form dated September 28,

2011. (Doc. 46, at 12). However, they do not specifically respond to the other documents requested under this paragraph. On the record before the Court it is unclear whether these documents do or do not exist or whether they were produced if they do exist. Therefore, the Court orders defendants to produce any documents responsive to the request in paragraph 14(h) as it relates to bank audit reports and non-accrual forms for the time period of September to November 2011 or if they were previously produced to identify them by bate number, or affirmatively state they do not exist or are not in defendants' possession.

Paragraph 15(a) requests bank loan review reports, both internal and external, with respect to an SBA loan trouble debt restructuring in and after November 2011; the Nov/Dec. 2011 Ford payoff with Lucken funds; establishing the January 2012 Lucken Credit Line; and the February 2013 Bank foreclosure/taking of the Lucken CD. (Doc. 43, at 12). Defendants seem to claim that they have produced all responsive documents and do not have the specific documents requested by plaintiffs as the loan to the Dirks parties was never labeled "Troubled Debt Restructure." (Doc. 46, at 12). Again, the Court has no reason to disbelieve defendants' assertion that they have produced all the documents responsive to RFP No. 3.3, which plaintiffs cite, and the more specific documents now requested under that RFP do not exist. Therefore, the Court finds defendants have complied with this request.

In paragraph 15(b) plaintiffs seek "[b]oard records, loan and credit committee records, Special Asset Committee records and bank officer comments to file (Doc. 43, at 12). Again defendants contend that all documents requested in paragraph 15(b) have been labeled and produced to plaintiffs. (Doc. 46, at 12). Plaintiffs have produced no evidence to the contrary and so the Court therefore finds that defendants have properly responded to the request.

## C. SANCTIONS

Plaintiffs also request discovery sanctions in their motion. (Doc. 43). Federal Rule 37(a) sets out the availability of sanctions pursuant to a motion to compel discovery under the same Rule, against a party for failure to respond or comply fully with an opposing party's discovery request. Rule 37(a)(5)(C) leaves the award for sanctions against a party where the motion is granted in part and denied in part in a court's discretion. FED. R. CIV. P. 37(a)(5)(C) ("If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.); *see also Sprint Commc'ns Co. L.P. v. Crow Creek Sioux Tribal Court*, 316 F.R.D. 254, 277 (D. S.D. 2016).

Specifically, plaintiffs request that, "following production of the requested material, Plaintiffs' be allowed to depose all necessary witnesses, regardless of the discovery deadlines." (Doc. 43, at 13). Defendants have produced documents responsive to plaintiffs' requests for production and plaintiffs merely contend that they have been deficient in their production of certain documents. Most of defendants lack of production is arguable and not blatantly in bad faith. The Court notes that it appears defendants were not initially forthcoming with the policies and procedures documents, which it initially claimed did not exist, were thrown away, and then discovered shortly before this motion to compel was filed. At this time the Court does not feel that defendants' responses were blatantly deficient without colorable argument and does not impose sanctions.

Plaintiffs' specific request for a sanction allowing additional depositions pursuant to the production of the ordered documents herein is denied at this time. After receipt and review of the requested documents, plaintiffs may file a renewed motion. The Court would entertain a motion requesting additional depositions outside the discovery period, where plaintiffs can make a specific showing that new and pertinent information

16

was discovered through the documents produced pursuant to this order, requiring additional depositions.

## IV. CONCLUSION

For the reasons set forth herein, the Court **grants in part and denies in part** plaintiffs' motion to compel discovery. (Doc. 43).

**IT IS SO ORDERED** this 31st day of March, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa