# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

THE JOHN ERNEST LUCKEN
REVOCABLE TRUST, and JOHN
LUCKEN and MARY LUCKEN,
Individually and as Trustees,

                Plaintiffs,

vs.

HERITAGE BANCSHARES GROUP,
INC., HERITAGE BANK NATIONAL
ASSOCIATION, and THOMAS
GEIGER, GARY GEIGER, directors of
Heritage Bank, and ROBERT
MATHIASEN, Chief Credit Officer of
Heritage Bank,

                Defendants.

No. C 16-4005-MWB

**OPINION AND ORDER
REGARDING THE PARTIES' POST-
TRIAL MOTIONS**

_____

## TABLE OF CONTENTS

**I.    INTRODUCTION**................................................................2

**II.   LEGAL ANALYSIS** .......................................................5

    **A.   Heritage's Post-Trial Motions**.............................................5
        **1.   Judgment as a matter of law** .........................................5
        **2.   Alternative motion for new trial** ........................................7
        **3.   Reduction, remittitur, or new trial on punitive
            damages** .........................................................8
            **a.   The due process challenge** .......................................9
            **b.   Remittitur** ........................................................ 12
        **4.   Credit for the Dirks-Lucken settlement** ............................. 14
            **a.   Background and arguments**.................................... 14
            **b.   Analysis** ........................................................ 15
        **5.   Summary**................................................................ 20

    **B.**    **The Luckens' Post-Trial Motions**...............................................**20**
        **1.**    **The Rule 59(e) Motion**..................................**20**
        **2.**    **Attorney's fees**............................................**21**
        **3.**    **Judgment on equitable claims**.......................**23**
            **a.**    **Arguments of the parties**......................**24**
            **b.**    **Analysis**...........................................**27**
                **i.**    **Unjust enrichment**......................**27**
                **ii.**    **Rescission**...............................**29**
        **4.**    **Summary**...................................................**31**
**III.**    **CONCLUSION**.............................................................**31**

## I.  INTRODUCTION

As I explained in prior rulings, this case arises from the last-ditch effort of the plaintiffs—collectively, the Luckens—to come to the financial rescue of a failing rural Iowa automobile dealership, Dirks Motor Company, in 2011 and 2012.  More specifically, it involves the alleged misconduct of Heritage Bank, which held much of Dirks Motor's debt, the bank holding company, and certain bank officers and directors—collectively, Heritage.  Pursuant to the  Seventh Amendment of the U.S. Constitution, this case proceeded to a jury trial on April 9, 2018, on the following claims:  (1) a state common-law "fraudulent misrepresentation" claim, based on alleged representations by Heritage, in November 2011, that it would provide Dirks Motor with floor plan financing, if John Lucken (a) provided funds to Heritage to be used to pay off Dirks Motor's debt to Ford Credit, and (b) purchased a $250,000 Certificate of Deposit at

Heritage and pledged it to Heritage as "backup collateral" for the promised floor-plan financing; and (2) a federal "unlawful tying arrangement" claim, based on allegations that, on January 9, 2012, Heritage conditioned its promise to provide floor plan financing to Dirks Motor on the Luckens executing the "Lucken line of credit" and other documents. At the same time as the jury trial on these claims, the Luckens' equitable claims of unjust enrichment and rescission were tried to the bench.

On April 12, 2018, the fourth day of trial, after a little over three hours of deliberations, the jury returned its verdict. The jury found for the Luckens on both their "fraudulent misrepresentation" claim and their "tying claim"; awarded $500,000 in compensatory damages for "fraudulent misrepresentation"; awarded $45,000 in compensatory damages for an "unlawful tying arrangement"; and awarded $4,000,000 in punitive damages on the "fraudulent misrepresentation" claim, with a finding that Heritage's fraudulent conduct was directed specifically at the Luckens.[1] Judgment was entered on the jury verdict on April 13, 2018.

Several post-trial motions followed the verdict. Beginning with Heritage's post-trial motions, Heritage made its Rule 50(a) Motion at the close of the Luckens' case, but I granted Heritage leave to file a written brief after trial, with the understanding that I would take the Rule 50(a) Motion under advisement. Consequently, on April 13, 2018, Heritage filed its Motion For Judgment As A Matter Of Law Under Rule 50 (Rule 50(a) Motion) and a supporting brief.[2] The Luckens filed their Resistance to that motion on April 30, 2018. On May 11, 2018, Heritage filed its Post-Trial Motions For Judgment As A Matter Of Law Or, Alternatively, Remittitur And Conditional New Trial (Rule

---

[1] The jury was instructed that it could not award punitive damages on the "tying" claim.

[2] I granted leave to file Heritage's overlength supporting brief on April 16, 2018.

50(b) And Rule 59 Motions). The Luckens filed their Resistance to those Motions on May 29, 2018, and Heritage filed its Reply on June 1, 2018. On August 14, 2018, I granted the Luckens' Motion For Leave To File Supplemental Authority In Support Of Their Resistance To Defendants' Rule 50(b) Motion For Judgment As A Matter Of Law Or, Alternatively, New Trial. On May 14, 2018, Heritage filed its Brief Regarding Credit For Settlement. On May 28, 2018, the Luckens filed their Resistance To Defendants' Motion For Setoff/Credit Regarding Settlement.

Turning to the Luckens' post-trial motions, on April 27, 2018, the Luckens filed their Rule 59(e) Motion To Alter Or Amend Judgment (Rule 59(e) Motion), requesting that I enter judgment trebling their damages on the "tying" claim to $135,000 and award attorney's fees pursuant to 12 U.S.C. § 1975, and also award pre-filing interest, pre-judgment interest, and post-judgment interest. Heritage did not respond to that motion. On April 27, 2018, the Luckens also filed their Motion For Award Of Reasonable Attorney's Fees (Motion For Attorney's Fees), pursuant to 12 U.S.C. § 1975, seeking attorney's fees directly attributable to the "tying" claim and a 33% allocation of other attorney's fees for case preparation and trial. The Luckens filed Errata to that motion on May 4, 2018. Heritage filed its Resistance to the Motion For Attorney's Fees on May 14, 2018, and the Luckens filed their Reply on May 21, 2018. On August 14, 2018, I granted the Luckens leave to file their Supplemental Request For Award Of Reasonable Attorney's Fees, seeking attorney's fees for post-trial briefing related to the "tying" claim. Heritage resisted the Supplemental Request on August 21, 2018. On May 11, 2018, the Luckens filed their Brief In Support Of The Court Entering Judgment On Plaintiffs' Unjust Enrichment And Rescission Claims (Request For Judgment On Equitable Claims). Heritage filed its Resistance to that Request on May 25, 2018, and the Luckens filed their Reply on May 31, 2018.

Heritage requested oral arguments on its Rule 50(b) And Rule 59 Motions. I conclude that the parties' written submissions are sufficient, however, so that I will consider those Motions and all the other post-trial motions and requests fully submitted on the written submissions.

I will consider Heritage's post-trial Motions, first, then turn to consideration of the Luckens' Motions, if appropriate.

## II.    LEGAL ANALYSIS
### A.    Heritage's Post-Trial Motions
#### 1.    Judgment as a matter of law

In this case, I took Heritage's Rule 50(a) Motion made at the close of the Luckens' case under advisement pending written submissions, and Heritage subsequently filed its post-trial Rule 50(b) And Rule 59 Motions. The Luckens have not argued that Heritage's post-trial Rule 50(b) Motion exceeds the scope of Heritage's earlier Rule 50(a) Motion. *See, e.g., Hagen v. Siouxland Obstetrics & Gynecology, P.C.*, 799 F.3d 922, 928 (8th Cir. 2015) ("[A] Rule 50(b) movant must have 'sought relief on similar grounds under Rule 50(a).'" (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008)). Under these circumstances, I will merge Heritage's two Rule 50 Motions and consider them under the standards applicable to a post-trial Rule 50(b) motion.

Heritage argues that the jury's verdict is "at war" with the undisputed facts in the case. The Luckens argue that there is not only sufficient but overwhelming evidence supporting the jury's verdict.

Review of a jury verdict by the courts "is extremely deferential given 'the danger that the jury's rightful province will be invaded when judgment as a matter of law is misused.'" *Dean v. Searcey*, 893 F.3d 504, 511 (8th Cir. 2018) (quoting *Bavlsik v. General Motors, L.L.C.*, 870 F.3d 800, 805 (8th Cir. 2017)). Thus, it is well-settled

that the court must give great deference to the jury's verdict and draw all reasonable inferences in favor of the nonmoving party, must not make credibility assessments or weigh the evidence, and may overturn the verdict only if no reasonable jury could have reached it. *See, e.g., id.*; *Letterman v. Does*, 859 F.3d 1120, 1124 (8th Cir. 2017); *Dean v. County of Gage, Neb.*, 807 F.3d 931, 936 (8th Cir. 2015); *Estate of Snyder v. Julian*, 789 F.3d 883, 887 (8th Cir. 2015); *Jackson v. City of Hot Springs*, 751 F.3d 855, 860 (8th Cir. 2014). Indeed, courts will not overturn a verdict unless there is "a complete absence of probative facts to support the verdict," *Dean*, 893 F.3d at 511 (internal quotation marks and citations omitted); "all of the evidence points one way and is susceptible of no reasonable inference sustaining the position of the nonmoving party," *Letterman*, 859 F.3d at 1124 (internal quotation marks and citations omitted); or "the record contains no proof beyond speculation to support [a] verdict," *Jackson*, 751 F.3d at 860 (internal quotation marks and citations omitted).

This is not a case in which these standards have been met. Heritage's arguments for judgment as a matter of law are essentially reiterations of its arguments in support of summary judgment, evidentiary motions, and other pretrial arguments. Notwithstanding Heritage's post-trial contention that the jury's verdict is "at war" with the undisputed facts, Heritage's arguments actually demonstrate the extent to which disputed facts gave rise to various reasonable inferences, not just inferences that would have supported a verdict for Heritage on any claim. To overturn the jury's verdict in this case would improperly invade the jury's province, *see Dean*, 893 F.3d at 511, because a reasonable jury could have found as this jury did on this record, *Letterman*, 859 F.3d at 1124; *Estate of Snyder*, 789 F.3d at 887; *Jackson*, 751 F.3d at 860. Because there was evidence from which the jury could draw reasonable inferences supporting the verdict, this simply is not a case involving "a complete absence of probative facts to support the verdict," *Dean*, 893 F.3d at 511, nor one involving "no proof beyond speculation to support [a] verdict,"

*Jackson*, 751 F.3d at 860 (internal quotation marks and citations omitted), nor one in which "all of the evidence points one way and is susceptible of no reasonable inference sustaining the position of the [Luckens]," *Letterman*, 859 F.3d at 1124 (internal quotation marks and citations omitted).

Heritage's Rule 50(a) Motion For Judgment As A Matter Of Law, made during trial, and its post-trial Rule 50(b) Motion For Judgment As A Matter Of Law are **denied**.

### 2.   *Alternative motion for new trial*

Heritage requests that, if I grant the motions for judgment as a matter of law, I also conditionally require a new trial, in the alternative, in the event that the judgment as a matter of law is vacated or reversed on appeal. Thus, Heritage expressly seeks a new trial only if I *grant* its Motion For Judgment As A Matter Of Law, but I have not done so. Therefore, no alternative new trial will be granted on the ground asserted by Heritage. Moreover, I will not grant a motion for new trial as an alternative to my *denial* of Heritage's Motions For Judgment As A Matter Of Law, either.

The Eighth Circuit Court of Appeals has repeatedly explained that a new trial pursuant to Rule 59 based on the sufficiency of the evidence should only be granted "when 'the verdict is against the weight of the evidence and allowing it to stand would result in a miscarriage of justice.'" *Lonesome Dove Petroleum, Inc. v. Holt*, 889 F.3d 510, 516 (8th Cir. 2018) (quoting *Bennett v. Riceland Foods, Inc.*, 721 F.3d 546, 553 (8th Cir. 2013)); *accord Coterel v. Dorel Juvenile Grp., Inc.*, 827 F.3d 804, 807 (8th Cir. 2016); *Michigan Millers Mut. Ins. Co. v. Asoyia, Inc.*, 793 F.3d 872, 878 (8th Cir. 2015); *Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875, 878–79 (8th Cir. 2015). Here, although I viewed the credibility of John Lucken's testimony differently than the jurors obviously did, and I would not have found for the Luckens on their claims because of this, I cannot say that the jury's verdict for the Luckens was so against the weight of the evidence that allowing it to stand would result in a miscarriage of justice. Indeed,

one of the reasons I find no miscarriage of justice is that a reasonable jury could have found for the Luckens on this trial record.

Therefore, Heritage's alternative Motion For New Trial is **denied**.

### 3. *Reduction, remittitur, or new trial on punitive damages*

Heritage also challenges the jury's award of $4,000,000 in punitive damages under due process standards, or, in the alternative, asks for a remittitur of the punitive damages and a conditional new trial on punitive damages, if the Luckens refuse to accept the remitted award. The Luckens argue that the punitive damages award should not be disturbed.

The Eighth Circuit Court of Appeals drew on a prior Eleventh Circuit decision for an explanation of the difference between a due process reduction of damages and a remittitur, as follows:

> As the Eleventh Circuit explained:
>
> > A constitutionally reduced verdict … is really not a remittitur at all. A remittitur is a substitution of the court's judgment for that of the jury regarding the appropriate award of damages. The court orders a remittitur when it believes the jury's award is *unreasonable* on the facts. A constitutional reduction, on the other hand, is a determination that the law does not permit the award. Unlike a remittitur, which is discretionary with the court … a court has a mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause.
>
> [*Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320,] 1331 [(11th Cir. 1999)] (emphasis in original).

*Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1049 (8th Cir. 2002). I will consider, first, whether I must reduce the punitive damages award, on due process

grounds, then whether I should exercise my discretion to grant a remittitur of the punitive damages award as unreasonable.

### a. *The due process challenge*

"Although juries have considerable flexibility in determining the amount of punitive damages, the Due Process Clause [of the Fourteenth Amendment to the U.S. Constitution] serves as a governor and prohibits 'grossly excessive civil punishment.'" *May v. Nationstar Mortg., L.L.C.*, 852 F.3d 806, 815 (8th Cir. 2017) (quoting *Trickey v. Kaman Indus. Techs. Corp.*, 705 F.3d 788, 802 (8th Cir. 2013)). "Punitive damages are grossly excessive if they 'shock the conscience' of the court or 'demonstrate passion or prejudice on the part of the trier of fact.'" *Id.* (quoting *Ondrisek v. Hoffman*, 698 F.3d 1020, 1028 (8th Cir. 2012)). As the Eighth Circuit Court of Appeals has repeatedly explained, the Supreme Court has three "guideposts" for courts to consider when reviewing a punitive damages award under the Due Process Clause: "'(1) the degree of reprehensibility of defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and civil penalties authorized or imposed in comparable cases.'" *Dziadek v. Charter Oak Fire Ins. Co.*, 867 F.3d 1003, 1012 (8th Cir. 2017) (quoting *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)); *May*, 852 F.3d at 815-16; *Lee ex rel. Lee v. Borders*, 764 F.3d 966, 975 (8th Cir. 2014).[3]

---

[3] Because the claim on which the jury awarded punitive damages in this case was an Iowa state-law claim, it is also appropriate to consider any additional factors considered by the Iowa Supreme Court regarding constitutionally excessive punitive damages awards. *See Dziadek*, 867 F.3d at 1012 (considering South Dakota standards). The Iowa Supreme Court has considered the same three "guideposts" identified by the United States Supreme Court and the Eighth Circuit Court of Appeals when considering

(Footnote continued . . .

Although Heritage argues that its conduct was not sufficiently reprehensible to warrant a $4,000,000 punitive damages award, *id.* (first "guidepost"), I disagree.

> When assessing reprehensibility, the Supreme Court instructs us to consider whether:
>
>> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.
>
> *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). The presence of just one indicium of reprehensibility is sufficient to render conduct reprehensible and support an award of punitive damages. *See Trickey*, 705 F.3d at 803.

*May*, 852 F.3d at 816. Here, the jury could reasonably have concluded that the conduct of a bank in defrauding an "angel" or "white knight" investor in a failing business in order to improve the bank's own position on the business's debt involved more than one instance of wrongful conduct and intentional trickery or deceit amounting to malice and was, therefore, reprehensible.

As to the second "guidepost," Heritage places a great deal of emphasis on the 8:1 ratio of the punitive damages to the compensatory damages. As the Eighth Circuit Court of Appeals has explained,

> We do not apply "a simple mathematical formula" to determine the constitutionality of a punitive damages award. *[BMW of N. Am., Inc. v.] Gore*, 517 U.S. [559,] 582, 116

---

whether punitive damages on a state-law claim are excessive, however. *See Wolf v. Wolf*, 690 N.W.2d 887, 894-96 (Iowa 2005). Thus, I conclude the application of factors recognized in state law would not change the result.

S.Ct. 1589 [(1996)]. But few awards exceeding a single-digit ratio of punitive to compensatory damages will satisfy due process. *State Farm*, 538 U.S. at 425, 123 S.Ct. 1513. A 4–to–1 ratio likely will survive any due process challenge "given the historic use of double, treble, and quadruple damages." *Wallace v. DTG Operations, Inc.*, 563 F.3d 357, 363 (8th Cir. 2009). Yet the 4–to–1 ratio established in *Wallace* is not dispositive because an award of punitive damages turns on the specific facts of each case. *State Farm*, 538 U.S. at 425, 123 S.Ct. 1513; *see also United States v. Big D Enters., Inc.*, 184 F.3d 924, 933 (8th Cir. 1999) (rejecting argument that punitive damages must be limited to 4–to–1 ratio as "miscontru[ing] the applicable law"). A higher ratio may be justified when the injury is hard to detect or the monetary damages are difficult to quantify. *Gore*, 517 U.S. at 582, 116 S.Ct. 1589. Indeed, we have explained that a 4.8–to–1 ratio is the current constitutional boundary for multimillion dollar compensatory awards, *see Ondrisek*, 698 F.3d at 1030 (citing *Eden Elec., Ltd. v. Amana Co.*, 370 F.3d 824, 827 (8th Cir. 2004)), and have affirmed higher ratios for smaller compensatory damage awards, *see Trickey*, 705 F.3d at 804 (affirming a 5–to–1 ratio); *Morse v. S. Union Co.*, 174 F.3d 917, 925–26 (8th Cir. 1999) (affirming a 5.7–to–1 ratio).

*May*, 852 F.3d at 817.

Here, the 8:1 ratio is within the "single-digit ratio" that appears to be the constitutional limit. *Id.* Also, this is not a case involving a "multimillion dollar compensatory award," in which a 4.8:1 ratio might be the "constitutional boundary," but one involving a "smaller compensatory award," for which a higher ratio is appropriate. *Id.* Furthermore, as mentioned, just above, a reasonable jury could find that the fraudulent conduct at issue involved "repeated trickery and deceit." *See Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1020-21 (8th Cir. 2008)

(approving an 8:1 ratio of punitive damages to compensatory damages where defendant engaged in "repeated trickery and deceit").

I am more sympathetic to Heritage's argument that the punitive damages award is out of proportion to available civil penalties, *Dziadek*, 867 F.3d at 1012 (third "guidepost"), in light of the $40,000 per violation penalty for "consumer fraud" under Iowa Code § 714.16. Nevertheless, in light of all three "guideposts," and the specific facts in this case on which punitive damages turn, *May*, 852 F.3d at 817, I cannot say that the $4,000,000 punitive damages award is "grossly excessive" or "shocks the conscience." *Id.* at 815.

Therefore, Heritage's request for a reduction of the punitive damages award on due process grounds is **denied**.

### b. Remittitur

I also conclude that Heritage is not otherwise entitled to a remittitur of the punitive damages award, even though remittitur is subject to a somewhat different legal standard, as Heritage argues. As the Eighth Circuit Court of Appeals has explained,

> We will only reverse a district court's denial of a motion for remittitur 'upon a manifest abuse of discretion or because the verdict is so grossly excessive the result is monstrous or shocking.'" *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 869 (8th Cir. 2006) (quoting *Callantine v. Staff Builders, Inc.*, 271 F.3d 1124, 1133–34 (8th Cir. 2001)).

*Synergetics, Inc. v. Hurst*, 477 F.3d 949, 960 (8th Cir. 2007). As the Eighth Circuit Court of Appeals has also explained,

> When presented with a question as to whether a state law claim damage award is excessive, state substantive law guides our review. *Jones v. Swanson*, 341 F.3d 723, 736 (8th Cir. 2003).

*Synergetics, Inc.*, 477 F.3d at 960. Thus, the substantive law of Iowa applies to the question of whether the punitive damages award on the "fraudulent misrepresentation" claim is excessive, for purposes of remittitur. *Id*.

The Iowa Supreme Court has explained,

> We apply the following standard in considering remittitur:

>> We will reduce or set aside a jury award only if it (1) is flagrantly excessive or inadequate; or (2) is so out of reason as to shock the conscience or sense of justice; or (3) raises a presumption it is a result of passion, prejudice or other ulterior motive; or (4) is lacking in evidentiary support.

>> The most important of the above enumerated tests is support in the evidence. If the verdict has support in the evidence the others will hardly arise, if it lacks support they all may arise.

> *Tullis v. Merrill*, 584 N.W.2d 236, 241 (Iowa 1998) (quoting *Rees v. O'Malley*, 461 N.W.2d 833, 839 (Iowa 1990)). If a verdict meets this standard or fails to do substantial justice between the parties, we must either grant a new trial or enter a remittitur. *Spaur*, 510 N.W.2d at 869.

*Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 595 (Iowa 1999), *as amended on denial of reh'g* (Feb. 4, 2000). In *Condon Auto Sales*, the Iowa Supreme Court concluded, because it had already determined that sufficient evidence supported the jury's punitive damages award, and that the district court's denial of the defendant's motion for a new trial was not an abuse of discretion, the district court's denial of remittitur was within the district court's discretion. *Id*.

Here, as in *Condon Auto Sales*, I concluded, above, that there was sufficient evidence to support the punitive damages award, because a reasonably jury could find that there was evidence of wrongful conduct involving intentional trickery or deceit

amounting to malice, and the conduct was, therefore, reprehensible. 604 N.W.2d at 594 (finding sufficient evidence to support an award of punitive damages because the defendant's retention of money given to him by a third party was done with a willful and wanton disregard for his employer's rights amounting to maliciousness). I conclude, further, that the punitive damages award is not flagrantly excessive; is not so "out of reason as to shock the conscience or sense of justice," for the same reasons that I did not find it "shocked the conscience" under the due process standard; does not raise a presumption that it is the result of passion, prejudice, or other ulterior motive; and is supported by evidence of malicious conduct. *Id*. at 595.

Therefore, Heritage's request for a remittitur of punitive damages and a conditional new trial is **denied**.

### 4. Credit for the Dirks-Lucken settlement

#### a. Background and arguments

Heritage argues that it is entitled to a credit for the value received by the Luckens from their September 2013 settlement with Richard Dirks (the Dirks-Lucken settlement, Defendants' Ex. 121). The reason for the Dirks-Lucken settlement was that Dirks failed to give the Luckens security or a promissory note for the Luckens' investment in Dirks Motor, as those parties had intended. *See* Defendant's Ex. 121 at 2. Pursuant to the Dirks-Lucken settlement, Lucken paid an additional $45,000 to Dirks, in order to receive an assignment from Dirks of life insurance policies with an estimated cash surrender value of $59,000 and death benefits of $550,000. However, the Dirks-Lucken settlement also provided that the Dirks family could buy back the policies under the following terms:

> By a cash payment to the Lucken Parties of $500,000, plus the additional 'payoff amount' advanced by the Lucken Parties to the Policy Owners in exchange for the Heritage Bank release of the collateral assignment on the Retained Policies, reduced by any 'Net Recovery' actually collected

> and paid to the Lucken Parties by the Heritage Bank or its
> related parties or insurers.

Defendant's Ex. 121 at 9, ¶ 2.1.

Heritage seeks a lien on the life insurance proceeds equal to the amount of the judgment it pays. The Luckens argue that Heritage did not properly assert a setoff or credit in a trial brief, so that it has waived the claim. The Luckens also argue that Heritage is not equitably entitled to a setoff from the proceeds of the two life insurance policies at issue. In support of this contention, they argue that the record reflects that Heritage was going to surrender the policies for their cash value and use the proceeds to pay down the principal balance of the Dirks Motor SBA Loan during Heritage's foreclosure of the loan, so that all Heritage would have received was the cash value of the policies. Next, they argue that Heritage sold the policies to Richard Dirks for adequate consideration, so that it waived its right to the death benefits of the policies. They also argue, in passing, that the Dirks-Lucken settlement compensates the Luckens for damages and amounts not at issue in the trial. Finally, the Luckens contend that there is no risk of a double recovery, because under the terms of the Dirks-Lucken settlement, if the present verdict in the Luckens' case against Heritage is upheld, the policies would revert to the Dirks family at no cost to the Dirks.

### b. *Analysis*

As the Iowa Supreme Court has stated,

> We have explained the standard concerning the *pro tanto* credit rule as follows:

>> Under the pro tanto credit rule, we "allow a dollar-for-dollar credit against a plaintiff's … verdict for sums received in settlement from other tortfeasors." … "All payments in settlement *of a claim*, except payments in the nature of a gratuity or arising from separate contract, fall under this rule, which is designed to

> prevent the unjust enrichment of a double recovery." … The burden is on the party seeking to reduce its liability by the settlement amount and must be pleaded as an affirmative defense…. This party must show that "without such a credit the plaintiff would receive more than full compensation for [the] *injuries*."
>
> *Ezzone [v. Riccardi]*, 525 N.W.2d [388,] 401 [(Iowa 1994)] (emphasis added) (quoting *Knauss v. City of Des Moines*, 357 N.W.2d 573, 578 (Iowa 1984)).
>
> The well-established rule is that a defendant is not entitled to a credit for any settlement amount unless it shows that without such credit, plaintiff would receive more than full compensation for his or her injuries. *Jamieson [v. Harrison]*, 532 N.W.2d [779,] 782 [(Iowa 1995)]; *Knauss*, 357 N.W.2d at 578. The focus therefore in applying the pro tanto credit rule is on the damages actually sustained and recoverable. *Jamieson*, 532 N.W.2d at 782–83 (concluding that although the district court was incorrect in holding that the pro tanto credit rule was inapplicable, the non-settling defendant was not entitled to a reduction of the judgment entered against him, based on plaintiff's settlement with another tortfeasor, because there was no double recovery if the settlement of $9000 did not exceed plaintiff's damages of $20,000).

*Revere Transducers, Inc. v. Deere & Co.*, 595 N.W.2d 751, 773–74 (Iowa 1999). In a prior decision, the Iowa Supreme Court also explained that "[t]he effect of our pro tanto credit rule has been circumscribed in comparative fault claims under Iowa Code sections 668.3 and 668.7," but when comparative fault does not apply, "the traditional pro tanto credit rule applies." *Ezzone v. Riccardi*, 525 N.W.2d 388, 401–02 (Iowa 1994), as amended on denial of reh'g (Dec. 15, 1994) (citations omitted).

In *Revere Transducers*, the Iowa Supreme Court stated,

> Revere . . . contends that the pro tanto credit rule does not apply when different theories of recovery are asserted against

> the settling and nonsettling defendants. In other words, Revere would interpret the phrase "all payments in settlement of a claim," *see Ezzone*, 525 N.W.2d at 401, to mean one claim, distinguishable from other types of claims. Under Revere's interpretation, the pro tanto rule would not apply when a plaintiff recovered different measures of damages on different theories of recovery against joint tortfeasors.

*Revere Transducers, Inc.*, 595 N.W.2d at 774. The Iowa Supreme Court did not plainly accept or reject this argument. Rather, the court concluded that the damages that the plaintiff could recover from the settling defendants were not all the same as those it could recover from the non-settling defendant, and the non-settling defendant had failed to establish what amount would fairly represent full compensation for the combined injuries that the plaintiff sustained as a result of the actions of all of the defendants. *Id*. Thus, the court concluded that the trial court had correctly refused to grant the non-settling defendant a *pro tanto* credit on the plaintiff's settlement with other defendants. *Id*. at 775.

I do not find any of the Luckens' arguments that Heritage waived a claim for credit or setoff to be persuasive. On the other hand, in this case, as in *Revere Transducers*, the Luckens argue that different theories of recovery were asserted against Dirks—that is, failure to provide collateral as intended—and against Heritage—fraudulent misrepresentation—and different damages were sought against Dirks. *See id*. at 774-75 (the court concluded that the damages that the plaintiff could recover from the settling defendants were not all the same as those it could recover from the non-settling defendant).[4] Unlike the situation in *Revere Transducers*, however, Heritage has argued

---

[4] The Luckens did not argue that the circumstances in this case may fall into the exception from application of the *pro tanto* credit rule for "'payments in the nature of a

(Footnote continued . . .

17

that the amount that fairly represents full compensation for the combined injuries that the Luckens sustained as the result of Dirks's breach of contract and Heritage's fraudulent misrepresentations was the loss of the Luckens' investment in Dirks Motor. *Compare id.* at 774 (rejecting a *pro tanto* credit where the non-settling defendant had failed to establish what amount would fairly represent full compensation for the combined injuries that the plaintiff sustained as a result of the actions of all of the defendants).

Thus, I conclude that the crux of the matter for determining whether Heritage is entitled to a *pro tanto* credit is the damages actually sustained and recoverable and whether the Luckens will receive a "double recovery." *Id.* (explaining that the "focus" in applying the *pro tanto* credit rule is on the damages actually sustained and recoverable (citing *Jamieson*, 532 N.W.2d at 782–83)); *Ezzone*, 525 N.W.2d at 401 (explaining that the *pro tanto* credit rule "'is designed to prevent the unjust enrichment of a double recovery'" and that the party seeking the credit "must show that 'without such a credit the plaintiff would receive more than full compensation for his [or her] injuries.'" (quoting *Knauss*, 357 N.W.2d at 578)).

Here, the damages actually sustained and recoverable by the Luckens, against either Dirks or Heritage, are for loss of the Luckens' investment in Dirks Motor. The Luckens have not explained, let alone demonstrated, that the Dirks-Lucken settlement compensates the Luckens for damages and amounts not at issue in the trial, at all or to

---

gratuity or arising from separate contract.'" *Revere Transducers*, 595 N.W.2d at 773-74 (emphasis added) (quoting *Ezzone*, 525 N.W.2d at 401). I mention this exception only because the parties did recognize that the Dirks-Lucken settlement was to settle the Luckens' claim that Dirks failed to give the Luckens security or a promissory note for their investment in Dirks Motor, as those parties had intended, *see* Defendant's Ex. 121 at 2, which suggests that the agreement was to settle a claim arising from a separate contract for the Luckens' investment in Dirks Motor. Even though both the Luckens and Heritage were aware of *Revere Transducers* and *Ezzone*, they did not address this exception, so I will not address it further *sua sponte*.

any degree. As matters currently stand, with my affirmance of the jury's verdict and damages awards, the Luckens would not obtain a double recovery, only the damages awarded against Heritage by the jury. This is so, because the Dirks-Lucken settlement provides that the Dirks family could buy back the policies from the Luckens for the death benefit amount of the policies, plus what the Luckens advanced to buy back the policies from Heritage, "reduced by any 'Net Recovery' actually collected and paid to the Lucken Parties by the Heritage Bank or its related parties or insurers." Defendant's Ex. 121 at 9, ¶ 2.1. This reduction of the buy-back amount by the amount of the recovery "collected and paid" to the Luckens by Heritage, if the verdict for the Luckens is upheld, means that the Luckens will not obtain the death benefits under the insurance policies as well the jury's damages award. Rather, if the verdict is upheld and payment on it is made, before Richard Dirks dies, the Dirks family are entitled to return of the policies from the Luckens for nothing, because the recovery from Heritage exceeds the amount that the Dirks family would have to pay to buy back the policies. In these circumstances, there is no "double recovery" for which Heritage is entitled to be compensated by a credit. On the other hand, there is a theoretical possibility of a double recovery, if Richard Dirks were to die and the Luckens were to receive the life insurance death benefits, obtained through the Dirks-Lucken settlement, before the Luckens' judgment against Heritage is final, and then also receive the damages awarded to them against Heritage.

Because there is a theoretical possibility of a "double recovery," I conclude that Heritage is entitled to a lien in the amount of the jury's award against Heritage on any death benefit that may be paid on the Dirks life insurance policies. That lien will expire upon the entry of a final, non-appealable judgment, rather than upon payment of the judgment. Otherwise, Heritage could conceivably maintain the lien and withhold full payment of the judgment until the insurance death benefits are paid, then execute on the lien to recover what it would pay for some part of the judgment.

Therefore, Heritage's request for a credit against the Dirks-Lucken settlement is **granted** to the extent that Heritage shall have a lien in the amount of the jury's award against Heritage on any death benefit that may be paid on the Dirks life insurance policies, but that lien will expire upon the entry of a final, non-appealable judgment in this case.

### 5. Summary

I conclude that Heritage is not entitled to any relief from the jury's verdict or damages awards. Reasonable jurors could have reached the conclusions that this jury did, and the verdict was not so against the weight of the evidence as to constitute a miscarriage of justice. Heritage also is not entitled to a reduction of the punitive damages award on due process grounds, nor a remittitur of the punitive damages on the ground that the punitive damages are so unsupported by the evidence and excessive as to shock the conscience. On the other hand, Heritage is entitled to a lien in the amount of the jury's award against Heritage on any death benefit that may be paid on the Dirks life insurance policies, but that lien will expire upon the entry of a final, non-appealable judgment in this case.

## B. The Luckens' Post-Trial Motions

Like Heritage, the Luckens have asserted several post-trial motions. I will also consider those motions in turn.

### 1. The Rule 59(e) Motion

In their Rule 59(e) Motion To Alter Or Amend Judgment (Rule 59(e) Motion), the Luckens request that I enter judgment trebling their damages of $45,000 on the "tying" claim to $135,000 and award attorney's fees, pursuant to 12 U.S.C. § 1975, and also award pre-filing interest, pre-judgment interest, and post-judgment interest. As to pre-filing interest, the Luckens argue that the injury for which they recovered was complete at a definite time before their action began, that is, November 23, 2011, when the

Luckens invested $500,000, due to the fraud on November 8, 2011, and September 23, 2013, the date they paid $45,000 to acquire the two life insurance policies. They argue that the proper pre-filing interest rate is 5% pursuant to IOWA CODE § 535.2. The Luckens also contend that they are entitled to pre-judgment interest pursuant to IOWA CODE § 535.3(1) calculated according to IOWA CODE § 668.13 to be 4.05%. They also seek post-judgment interest, which is governed by federal law, specifically, 28 U.S.C. § 1961(a), in a diversity action, on the entire award of compensatory and punitive damages, as well as on any award of attorney's fees and costs. They contend that the proper rate for post-judgment interest is 2.074%. The Luckens included with their motion, as Exhibit A, a table of the amounts of damages and the categories of interest that apply to each, including the periods for which such interest would apply.

Because Heritage did not respond to this motion, and I find the motion is supported by proper authority and makes appropriate calculations, this motion is granted. Consequently, I will direct entry of judgment including the trebling of the damages of $45,000 on the "tying" claim to $135,000, pursuant to 12 U.S.C. § 1975.[5] I will also direct the entry of judgment including pre-filing, pre-judgment, and post-judgment interest, as claimed in Exhibit A to the Luckens' Rule 59(e) Motion.

### 2. *Attorney's fees*

Next, the Luckens filed a Motion For Attorney's Fees, pursuant to 12 U.S.C. § 1975, seeking attorney's fees directly attributable to the "tying" claim, in the amount of $55,577, and a 33% allocation of other attorney's fees for case preparation and trial, in the amount of $74,569. In their Supplemental Request For Award Of Reasonable Attorney's Fees, they seek additional attorney's fees for post-trial briefing related to the

---

[5] I will address the Luckens' request for attorney's fees pursuant to 12 U.S.C. § 1975 in the next section.

"tying" claim, in the amount of $15,088, and an additional allocation of other post-trial attorney's fees in the amount of $17,800. Thus, of their total attorney's fees of $350,571, for all claims, the Luckens seek to recover $163,034 for their "tying" claim and allocation of case preparation and trial fees.

Heritage does not argue with the general concept behind the Luckens' claims for fees directly related to the "tying" claim and some allocation of other attorney's fees, but Heritage does disagree with the Luckens' characterization of a number of itemized entries as being directly related to the "tying" claim. Heritage also "questions" the Luckens' assertion that one-third of time not specifically allocable to the "tying" claim should nonetheless be included in the award of attorney's fees. Finally, Heritage does not generally question the hourly fees upon which the Luckens have based their lodestar calculation, but Heritage does question the appropriateness of billing paralegal time at $155 per hour.

Section 1975 of Title 12 of the United States Code provides that a party injured by conduct forbidden by 12 U.S.C. § 1972, such as the "unlawful tying arrangement" at issue in this case, "shall be entitled to recover . . . a reasonable attorney's fee." The court and the parties, here, are familiar with the "lodestar" method for calculating attorney's fees in federal court, *see, e.g., Paris Sch. Dist. v. Harter*, 894 F.3d 885, 889 (8th Cir. 2018), and very little of Heritage's challenge to the Luckens' Motion For Attorney's Fees is directed at that part of the calculation of attorney's fees in this case. Suffice it to say, I find that the claim for $155 per hour for paralegal time is reasonable and that rate was clearly a savings over the attorneys' hourly rates

Thus, I turn to Heritage's main challenge, which is to the allocation of attorney's fees between the "tying" claim, for which § 1975 authorizes an award of attorney's fees, and the "fraudulent misrepresentation" claim, for which the Luckens admit there is no authorization for an award of attorney fees. The Eighth Circuit Court of Appeals

recognized, some time ago, that "an apportionment of attorney fees" to exclude work related to a claim on which attorney's fees were not authorized "rest[s] with the discretion of the trial court." *See Gopher Oil Co., Inc. v. Union Oil Co. of Cal.*, 955 F.2d 519, 527 (8th Cir. 1992).

Here, although I am not entirely unsympathetic to Heritage's contention that some of the time attributed directly to the "tying" claim may not all be properly allocated to that claim, I conclude that no reduction of those fees is appropriate. This is so, because the amount claimed for fees directly related to the "tying" claim is reasonable, in my view, in light of the pertinent factors. I reach a quite different conclusion about allocation of 33% of other attorney's fees for case preparation and trial and post-trial matters. I will not award the requested allocation, because I find that the allocated time would have been expended on the other claim for "fraudulent misrepresentation," even had there been no "tying" claim in the case, and I also find that the results on the "tying" claim were not sufficiently impressive to warrant an award of a share of the other attorney's fees for case and trial preparation.

Therefore, the Luckens' Motion For Attorney's Fees, as supplemented, is **granted** to the extent that I will award $55,577 in attorney's fees originally claimed as directly attributable to the "tying" claim, plus attorney's fees claimed in the Luckens' Supplement for post-trial briefing related to the "tying" claim, in the amount of $15,088, for a total award of $70,665, but the Luckens' Motion For Attorney's Fees, as supplemented, is otherwise **denied**.

### 3.     *Judgment on equitable claims*

The final post-trial motion now before me is the Luckens' Request For Judgment On Equitable Claims. The Luckens explain that this Request is "purely" as an alternative to the jury verdict they have already obtained, because of the possibility that Heritage could prevail on its arguments that the fraud verdict might be overturned. Because of

that possibility, they ask me to enter judgment on their unjust enrichment and rescission claims, which the parties agreed I would hear. They also request entry of judgment on the equitable claims, even if that judgment would be duplicative of the jury's verdict on their fraud claim.

### a. *Arguments of the parties*

The Luckens argue that the evidentiary record supports the entry of judgment on their equitable claims independently of the jury verdict in their favor on their fraud claim. As to their unjust enrichment claim, the Luckens argue that there are clear links between their investment of $500,000 in Dirks Motor and preserving Dirks Motor's Ford and GM franchises, and that Heritage benefitted from the preservation of those franchises, because Heritage received most of the proceeds from the eventual sale of Dirks Motor to Total Motors, which included both franchises. They also argue that Heritage benefitted from their investment in Dirks Motor, because their investment allowed Dirks Motor to make additional SBA Loan payments to Heritage. The Luckens argue that these benefits to Heritage were at their expense and that allowing Heritage to retain the benefits would be unjust under the circumstances, because those benefits were obtained by fraud. They argue that a verdict on rescission is also appropriate, because that claim requires a lesser showing than the fraud claim on which they prevailed before the jury, because it does not require proof of scienter or pecuniary damage. The Luckens argue that the court should also award the $4,000,000 in punitive damages for unjust enrichment and rescission that the jury awarded on their fraud claim. This is so, they argue, because the circumstances giving rise to Heritage's enrichment will continue to be unjust, in that Heritage's scienter and, thus, Heritage's willful and wanton disregard for the rights of the Luckens, will not have changed.

In response, Heritage argues, first, that the Luckens' unjust enrichment claim should fail. Heritage argues that the record does not demonstrate that the Luckens

conferred a benefit on Heritage, because Heritage could have obtained a higher price for Dirks Motor from Total Motors before the Luckens' investment than it ultimately did, after Dirks Motor still failed, and the investment ultimately did not preserve both Dirks Motor's GM and Ford franchises as saleable assets. Heritage also argues that it did not benefit from the "Lucken line of credit," because it loaned out $1,169,058.98 over the life of the line of credit, and only received back the amount that it loaned with some interest at the rate that the Luckens had agreed to pay, but it did not collect $2,555.60 of interest or $12,047.91 of late charges. Heritage argues that unjust enrichment cannot be based on the "Lucken line of credit" for the further reason that there was a written contract related to it between the Luckens and Heritage. Heritage argues that the Luckens voluntarily conferred a benefit on Richard Dirks, and any incidental benefit to Heritage of the Luckens' loans to Dirks Motor does not require repayment by Heritage. Heritage also argues it did not retain a benefit under circumstances making it inequitable not to return payment for its value, because there was no fraud, where the jury's findings notwithstanding, there was no promise regarding floor plan financing if the Luckens provided financing, and the Luckens knew it. Heritage argues that what is really at issue is a transaction between the Luckens and Dirks Motor, for which Richard Dirks provided inaccurate information.

As to the rescission claim, Heritage argues that the Luckens have an adequate and complete remedy at law for fraud, and if the jury's verdict stands, the Luckens have obtained that remedy. Even if the fraud verdict is overturned, however, Heritage argues that the court is free to conclude that there is insufficient proof on the elements of representation, materiality, and justifiable reliance to prove a claim for rescission based on fraud. Next, Heritage argues that the court cannot enter judgment in the Luckens' favor on both equitable claims, because unjust enrichment would be incompatible with the contract rescission claim. Finally, Heritage argues that rescission would require

25

putting both parties back in the position they were in, in November 2011. Heritage argues that means that if the Luckens receive their $500,000.00 back from Heritage, Heritage should receive back the life insurance policies on the life of Dick and Helen Dirks that it held as collateral on November 18, 2011, or the Luckens will obtain a profit from the bargain they rescinded.

In their reply, the Luckens dispute Heritage's contention that it would have made more from the foreclosure of Dirks Motor and sale to Total Motors before the Luckens' investment than it ultimately obtained from the sale to Total Motors after Dirks Motor ultimately failed. They argue that Heritage is wrong about the nature of the pre-investment offer by Total Motors, because it was conditioned on obtaining the GM franchise, but GM had made clear it would not approve a satellite operation in LeMars, Iowa, and GM would have foreclosed on its franchise before the deal with Total Motors could have been completed. They also argue that Heritage is simply wrong when it asserts that Total Motors ultimately only bought the GM franchise, not the Ford franchise, and wrong about its valuations of both the pre-investment and post-investment sales of Dirks Motor.

As to legal matters, the Luckens contend that Heritage's argument that unjust enrichment cannot be granted because a contract exists is flawed, because their claim is for "money had and received," not for "quantum meruit" or implied contract. They also argue that the court could grant rescission even if it overturns the fraudulent misrepresentation verdict for failure to prove damages. Finally, they argue that rescission does not require return of the life insurance policies to Heritage, because Heritage already received the policies' cash value, which is what Heritage intended to realize from cashing in the policies.

### b. Analysis

As I mentioned, above, regarding Heritage's request for a new trial, I would not have found for the Luckens on their claims at law. The Luckens contend that I can grant them a verdict in their favor on the equitable claims independently of the jury's verdict on the fraudulent misrepresentation claim. I conclude that I can also deny relief on the Luckens' equitable claims, notwithstanding that the jury found in their favor on the fraudulent misrepresentation claim. For the reasons stated, below, I now find for Heritage on both of the Luckens' equitable claims.

### i. Unjust enrichment

The Iowa Supreme Court has recognized that "unjust enrichment is a broad principle with few limitations" that "serves as a basis for restitution." *State, Dep't of Human Servs. ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 155 (Iowa 2001). As the Iowa Supreme Court has explained,

> The doctrine of unjust enrichment is based on the principle that a party should not be permitted to be unjustly enriched at the expense of another or receive property or benefits without paying just compensation. *Credit Bureau Enters., Inc. v. Pelo*, 608 N.W.2d 20, 25 (Iowa 2000). Although it is referred to as a quasi-contract theory, it is equitable in nature, not contractual. *See Iowa Waste Sys., Inc. v. Buchanan County*, 617 N.W.2d 23, 29 (Iowa Ct.App.2000). It is contractual only in the sense that it is based on an obligation that the law creates to prevent unjust enrichment. *See id*. at 29–30.

*Palmer*, 637 N.W.2d at 154. More specifically,

> Recovery based on unjust enrichment can be distilled into three basic elements of recovery. They are: (1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances.

*Palmer*, 637 N.W.2d 154–55 (footnotes omitted).

I have lingering doubts that the Luckens conferred a benefit that enriched Heritage, although I believe that the Luckens conferred a benefit on Richard Dirks that forestalled, even if only briefly, the foreclosure on his dealership and allowed him time for a less financially devastating exit from business. Any benefit to Heritage appears to me to be merely incidental. I am aware, however, that the Iowa Supreme Court has "never limited [unjust enrichment] to require the benefits to be conferred directly by the plaintiff." *Id.* at 155. I am also willing to accept, at least for the sake of argument, that the Luckens' investment of $500,000 in Dirks Motor preserved both Dirks Motor's GM franchise and its Ford franchise, and that Heritage benefitted from the preservation of those franchises, because Heritage received most of the proceeds from the eventual sale of Dirks Motor to Total Motors, which paid for those franchises. I am also willing to accept, at least for the sake of argument, that the Luckens' investment also benefitted Heritage, because their investment allowed Dirks Motor to make additional SBA Loan payments to Heritage, which Heritage did not address in its resistance to the Luckens' request for judgment on their equitable claims.

My greatest difficulty with the Luckens' unjust enrichment claim is with the Luckens' attempt to establish that it is unjust to allow Heritage to retain the benefits under the circumstances. *Id.* (third element of an unjust enrichment claim). The circumstance on which the Luckens rely is fraud, but unlike the jury, I do not find that there was any fraud by Heritage. Again, while the jury reasonably found from John Lucken's testimony that Heritage, through Sterling Crim, made a promise regarding floor plan financing if the Luckens provided funds, upon my consideration of all of Mr. Lucken's testimony and all the other evidence in the case, I cannot agree. Rather, I find that, while floor plan financing contingent on the Luckens providing funds was certainly discussed at the meeting on November 8, 2011, no *promise* of such financing was made, then or subsequently, only indications that Mr. Crim thought such financing could probably be

worked out. Also, again obviously contrary to the jury's reasonable findings, I conclude from my consideration of all the evidence in the case that the Luckens were not duly diligent in investigating the investment and, more importantly, that the Luckens intended to invest and would have invested in Dirks Motor, whether or not Heritage promised to provide floor plan financing. While I find that the jury's conclusions were reasonable on the record presented, upon my independent consideration of the evidence, I find that it is not unjust for Heritage not to return the investment to the Luckens after Dirks Motor failed despite that investment.

Therefore, the Luckens' request for entry of judgment in their favor on their equitable claim of unjust enrichment is **denied**.

### ii.     *Rescission*

The Luckens also seek judgment in their favor on their equitable claim for rescission. The Iowa Supreme Court has explained,

> In general, "fraudulent misrepresentations leading to the creation of a contract give rise to a right of rescission." *Robinson v. Perpetual Servs. Corp.*, 412 N.W.2d 562, 568 (Iowa 1987); *accord Hyler [v. Garner]*, 548 N.W.2d [864,] 870 [(Iowa 1996)]. When a party relies on the doctrine of equitable rescission to avoid a contract, five elements must be proven: "(1) a representation, (2) falsity, (3) materiality, (4) an intent to induce the other to act or refrain from acting, and (5) justifiable reliance." *Hyler*, 548 N.W.2d at 872; *accord Utica Mut. Ins. Co. v. Stockdale Agency*, 892 F.Supp. 1179, 1193 (N.D.Iowa 1995).

*Rubes v. Mega Life And Health Ins. Co.*, 642 N.W.2d 263, 269 (Iowa 2002). The court also explained the distinction between an equitable action to rescind a contract and the proof required to recover at law based on fraudulent misrepresentation, which turns on the "intent" requirement:

> An action to rescind a contract is regarded as less severe, and
> hence less demanding in its proof requirements, than an action
> at law for damages based on fraud. *Hyler*, 548 N.W.2d at
> 871. In an equitable rescission action, it is not the knowledge
> of falsity that is at issue, but "whether misrepresentations
> induced the complaining party to contract." *Utica*, 892
> F.Supp. at 1195. As this court stated in *Hyler*, injecting an
> "intent to deceive" element in a rescission case would
> reintroduce the concept of scienter, "making the elimination
> of this requirement in equity cases illusory." *Hyler*, 548
> N.W.2d at 872.

*Rubes*, 642 N.W.2d at 269.

Here, Heritage argues that there is insufficient proof on the elements of representation, materiality, and justifiable reliance to prove a claim for rescission based on fraud. Although a reasonable jury could conclude from the evidence in the case that these elements were proved, I am not satisfied that they were, based on my independent review of the evidence. For the reasons I concluded, just above, that there was no promise to provide floor plan financing on which the Luckens' unjust enrichment claim relied, I find that there was no such representation on which their rescission claim relies. *Id*. (first element is a representation). Also, again for reasons stated just above, I conclude that the elements of materiality and justifiable reliance have not been proved to my satisfaction. *Id*. (third and fifth elements are materiality of the representation and justifiable reliance on the representation). Specifically, I conclude from John Lucken's testimony and other evidence in the case, including what I find was a lack of due diligence in investigating the investment on the Luckens' part, that the Luckens intended to invest and would have invested in Dirks Motor, whether or not Heritage represented that it would provide floor plan financing. In these circumstances, the jury's reasonable conclusion notwithstanding, I am not convinced that the alleged representation was material or that the Luckens relied upon it, when they decided to invest in Dirks Motor.

Therefore, the Luckens' request for entry of judgment in their favor on their equitable claim of rescission is **denied**.

### *4.    Summary*

The Luckens' Rule 59(e) Motion, which was unopposed, is granted, and I will enter the requested amendments to the judgment. The Luckens' Motion For Attorney's Fees, as supplemented, is granted only in the reduced amount of $70,665. Finally, the Luckens' Request For Judgment On Equitable Claims is denied as to both their unjust enrichment claim and their rescission claim.

## III.    CONCLUSION

Upon the foregoing,

1.    Heritage's Rule 50(a) Motion at the close of the Luckens' case, as briefed post-trial on April 13, 2018 (docket no. 154), and previously taken under advisement, is **denied**;

2.    The Luckens' April 27, 2018, Rule 59(e) Motion To Alter Or Amend Judgment (docket no. 159) is **granted**, as follows:

    a.    **Judgment shall enter** trebling the damages of $45,000 on the "unlawful tying arrangement" claim to $135,000, pursuant to 12 U.S.C. § 1975; and

    b.    **Judgment shall enter** for pre-filing, pre-judgment, and post-judgment interest, as claimed in Exhibit A to the Luckens' Rule 59(e) Motion;

3.    The Luckens' April 27, 2018, Motion For Award Of Reasonable Attorney's Fees (docket no. 162), pursuant to 12 U.S.C. § 1975, as supplemented on August 14, 2018 (docket no. 192), is **granted in part and denied in part**, as follows:

     a.    The Motion, as supplemented, is **granted** to the extent that the Luckens are awarded a total of $70,665 in attorney's fees, and **judgment shall enter** accordingly; but

     b.    The Motion, as supplemented, is otherwise **denied**;

4.    Heritage's May 11, 2018, Post-Trial Motions For Judgment As A Matter Of Law Or, Alternatively, Remittitur And Conditional New Trial (172) are **denied** in their entirety;

5.    The Luckens' May 11, 2018, Request That The Court Enter Judgment On Plaintiffs' Unjust Enrichment And Rescission Claims (docket no. 176) is **denied** in its entirety; and

6.    Heritage's May 14, 2018, Request Regarding Credit For Settlement (docket no. 177) is **granted** to the extent that Heritage shall have a lien in the amount of the jury's award against Heritage on any death benefit that may be paid on the Dirks life insurance policies, but that lien will expire upon the entry of a final, non-appealable judgment in this case.

The Clerk of Court shall **enter an amended judgment** accordingly.

**IT IS SO ORDERED**.

**DATED** this 22nd day of August, 2018.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA